**The below described is SIGNED.**

**Dated: September 16, 2013**    

**WILLIAM T. THURMAN**
U.S. Bankruptcy Judge

*eeo*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH

| In re:<br><br>**NORMAN STAIN and**<br>**SUZANNE STAIN,**<br><br>Debtors. | Bankruptcy No. 10-30043<br><br>Chapter 13<br><br>**Chief Judge William T. Thurman** |
|---|---|

### MEMORANDUM DECISION

The matter before the Court is the Debtors' Motion to Abate (the "Motion"). Debtors request that the Court "permanently" abate the sum of $3,000, representing plan payments from April 25, 2012 through July 25, 2012 that came due under their Chapter 13 Plan prior to the Debtors' first request for relief. Only the Chapter 13 Trustee objected to the Motion. A hearing was conducted on June 24, 2013, during which the Court listened to arguments by Brian Johnson for Norman and Susanne Stain (the "Debtors") and by Tami Gadd-Willardson for the Chapter 13 Trustee, Kevin Anderson (the "Trustee"). The Debtors contend that an "abatement" forgives past due obligations in their entirety that came due under the plan before the debtors requested relief from the court, thus the obligations are "permanently" abated. The Debtors seek clarification from the Court on the term abatement and whether it is "temporary" or "permanent." Further, the Debtors request relief from

the Court in one of three ways: (1) the Court apply a retroactive abatement that forgives the delinquent payments in their entirety; (2) the Court shorten the period of the Debtors' commitment period; or (3) the Court further modify the plan to prorate the ongoing plan payments to catch up on the arrearage. The Court has carefully reviewed and considered the parties' arguments and submissions and has conducted its own independent research of the relevant case law. The court issues the following Memorandum Decision, which constitutes the Court's findings of fact and conclusions of law under Federal Rule of Civil Procedure 52, made applicable to this proceeding by Federal Rules of Bankruptcy Procedure 9014 and 7052.

## I.     JURISDICTION AND VENUE

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. The Motion is a core proceeding under 28 U.S.C. § 157(b)(2)(A). Venue is properly lain in this District pursuant to 28 U.S.C. § 1408.

## II.    BACKGROUND AND FINDINGS OF FACT

Debtors filed for chapter 13 bankruptcy on July 26, 2010. At filing, the Debtors' Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income ("Form 22C") indicated that the Debtors were above-median income for a household of two in the state of Utah. The Court confirmed the Debtors' chapter 13 plan on January 26, 2011 (the "Plan"), which provided for 100% payment of all unsecured claims plus 2% interest. The Debtors made payments on the Plan until April 2012. Three months prior to stopping payments, Mr. Stain suffered a work injury and was unable to work his full shift. With this change in circumstances, the Debtors attempted to keep up with the Plan payments, but were unable to do so past March 2012.

The Debtors did not notify the Court or the Trustee of the change in circumstances, and on July 19, 2012, the Trustee filed a Motion to Dismiss for non-payment.

On August 13, 2012, the Debtors filed an Objection to the Trustee's Motion to Dismiss and a Motion for Early Discharge. An evidentiary hearing date was set for the Motion to Dismiss and the Motion for Early Discharge on November 6, 2012, which was continued to January 28, 2013. Prior to the evidentiary hearing, the Debtors informed the Trustee that they were receiving worker's compensation and thus withdrawing their Motion for Early Discharge. On February 25, 2013, the Debtors filed an Objection to the Motion to Dismiss, a Motion to Abate Plan Payments, and a Motion to Modify Confirmed Chapter 13 Plan. After a hearing on April 1, 2013, the Court sustained the Objection to the Motion to Dismiss and granted the Debtors' Motion to Modify the Confirmed Chapter 13 Plan (the "Modified Plan"). Thereafter, an order was entered on April 24, 2013 (the "April 24, 2013 Order").[1] Under the Modified Plan, the Debtors' payments are $304 per month for the remaining twenty-nine months of the plan, general nonpriority unsecured creditors receive a pro rata return, and the delinquent payments as of the filing of the Objection to the Trustee's Motion to Dismiss are abated. However, at the hearing, the Trustee objected to the Debtors' request for an abatement of the delinquent payments from April 2012 to July 2012 in the amount of $3,000 that came due before the request for relief (the "Delinquent Payments"). The Trustee contended that the request for an abatement of the Delinquent Payments was asking the Court to forgive the Delinquent Payments in their entirety, not for the Delinquent Payments to be tacked on to ongoing plan payments or to the end of the Plan. The Trustee argued that the Debtors' proposal would amount

---

[1] On August 16, 2013, an amended order was entered modifying the April 24, 2013 Order (the "August 16, 2013 Order").

to a "permanent abatement," which is contrary to the standard use of abatement in this District. The Court requested that the Debtors and the Trustee submit briefs regarding how the Court can modify a plan for delinquent plan payments that came due prior to a request for relief. On June 24, 2013, the Court heard arguments from the Debtors and the Trustee, at which time all secured creditors had been paid and unsecured creditors had received a 20% pro rata distribution on their claims.

### A. Debtors' Proposed Relief

The Debtors offered three ways in which the Court could grant relief for delinquent payments that came due before filing a motion for relief. First, the Debtors argue that the Court should hold that the term "abatement" applies retroactively to modify plan payments and allows forgiveness of delinquent plan payments. The Debtors recognize the standard practice in this District is for debtors to file "Motions to Abate and Modify," but they believe that the term "abate" is confusing and meaningless unless it is defined as a modification that reaches back in time. By defining abatement as a retroactive modification, which the Debtors believe is in harmony with the use of the word in other legal contexts, the Court would be able to forgive delinquent plan payments in their entirety when the debtor shows a substantial change in circumstances.

Second, the Debtors argue that the Court should shorten the commitment period of the Plan, thus allowing the Debtors to tack on the Delinquent Payments to the end of the Plan.[2] The Debtors

---

[2] The Debtors only requested that the commitment period be shortened in their brief. It is unclear how shortening the commitment period would resolve the delinquency without tacking on additional months to a shortened commitment period. Therefore, the Court assumes that the Debtors meant to pay the arrearage by tacking on additional months to a shortened commitment period.

emphasize that since the 2005 Bankruptcy Abuse Prevention and Consumer Protection Act[3] ("BAPCPA"), there is no flexibility for an above-median debtor to adjust payments when the debtor becomes delinquent due to a substantial change in circumstances. Previous to BAPCPA, an above-median debtor could have a thirty-six to sixty month plan. Thus, if a debtor missed a payment under a thirty-six month plan, the delinquent payments could be tacked on to the end of the payment plan and the plan would be extended. Once the debtor reached a sixty month plan, the payments each month would have to increase to make up for the deficiency, which in turn could make the plan unfeasible. Here, the Debtors believe that it was not the intent of Congress to create such an inflexible plan when Congress provided that the plan period for an above-median debtor be both a minimum and maximum of sixty months. The Debtors argue that 11 U.S.C. § 1329[4] does not require adherence to § 1325(b), which provides for the sixty-month minimum and maximum commitment period.

Lastly, if the Delinquent Payments cannot be forgiven in their entirety or the plan length shortened, the Debtors request that the Court order that the first eleven payments of the remaining twenty-nine payments pursuant to the April 24, 2013 Order, as modified by the August 16, 2013 Order, serve as cure for the Delinquent Payments and that the remaining payments satisfy the Modified Plan.

---

[3] Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23.

[4] Unless otherwise indicated, all future statuory references are to the Bankruptcy Code, Title 11 of the United States Code.

B.  **Trustee's Response to Debtors' Offered Relief**

The Trustee agrees that the Debtors deserve relief, and, if the Court is to grant relief, the Trustee recommends the third option suggested by the Debtors. To the first option, the Trustee points to this Court's case law that describes an abatement as "essentially seeking a plan modification." *In re Tonioli*, 359 B.R. 814, 816 n.1 (Bankr. D. Utah 2007). As understood by the Trustee, abatements in local bankruptcy practice are prospective plan modifications that can alter future obligations but cannot be used to retroactively eliminate an obligation already incurred under the plan. The Trustee emphasizes that the term "abatement" is synonymous with "modification" and that the modification must provide for the cure of any delinquency that was due at the time of the Motion to Abate.

To the second argument, the Trustee strongly objects to shortening the commitment period. The Trustee argues that the commitment period is determined at the date of petition, and that the length of the plan should not be modified. According to the Trustee, a debtor can choose when to file his or her bankruptcy petition and is therefore able to plan the date of filing to coincide with a time that would place the debtor as a below-median debtor rather than an above-median debtor. If the commitment period is modified by debtors based on a significant change in circumstances, the Trustee argues that the "door must be allowed to swing both ways," and the Trustee would be able to extend the commitment period when debtors have a change in circumstances for the better. To allow a change in the commitment period would place an administrative burden on the Trustee or an unsecured creditor. The Trustee or an unsecured creditor would have to continuously monitor the feasibility and payment schedules in a chapter 13 plan.

If the Court is to grant relief, the Trustee prefers the third option suggested by the Debtors. The Trustee argues that $254 of the $304 payments going forward should be allocated to the Delinquent Payments and that the remaining $50 go toward payments under the Modified Plan to stay within the sixty-month commitment period.

### III. DISCUSSION

The Court will address the Debtors' proposals in turn.

#### A. The Definition of Abatement

As cited by both the Debtors and the Trustee, this Court previously addressed the definition of abatement. As noted in *In re Tonioli,* "an 'abatement' is a method for treating delinquencies in plan payments which has evolved through local practice. The effect of an abatement is to extend the length of a plan, and pay any abated delinquencies prior to discharge. Motions seeking an abatement are essentially seeking a plan modification and should be treated accordingly." *In re Tonioli*, 359 B.R. 814, 816 n.1 (Bankr. D. Utah 2007) (citations omitted). As followed in this District, abatement is a term of art. *In re Hughes*, No. 08-24736, 2009 WL 2252181, at *2 n.2 (Bankr. D. Utah, July 17, 2009) (Mosier, J.). When a party files a motion to abate, the party is seeking to modify the plan. The abatement is for a payment that already came due under the plan and is still owed by the debtors. A confirmed chapter 13 plan is binding, and the Court will not eliminate a payment that came due under the plan before the debtors request relief. *See In re Talbot*, 124 F.3d 1201, 1209 (10th Cir. 1997) ("[T]he order confirming a chapter 13 plan represents a binding determination of the rights and liabilities of the parties as ordained by the plan. Absent timely appeal, the confirmed plan is *res judicata* and its terms are not subject to collateral attack.") (citation omitted).

However, upon request, it is within this Court's authority to modify a plan going forward under § 1329. When the Court grants an abatement, the delinquent payments can be tacked on to the end of the plan or monthly payments can increase to catch up on the arrearage. Abatement is used to modify plans prospectively to include delinquent payments, not to eliminate payments that came due before debtors requested relief. The Debtors argue that a permanent abatement goes to forgiving the delinquency, but a permanent abatement is simply an approved modified plan that either tacks on the delinquent payments at the end of the plan or increases or prorates the plan payments going forward to account for the arrearage.

**B.    Changing the Length of the Commitment Period.**

Chapter 13 above-median income debtors are subject to a commitment period that is no less than sixty-months, § 1325(b)(4)(A)(ii), and no more than sixty months. § 1322(d)(1). Under § 101(10A), the current monthly income of a debtor is calculated based on the six-month look-back period, which calculation is then used under § 1325(b)(4) to determine the length of the plan. Modification of a chapter 13 plan after confirmation is permitted pursuant to § 1329. As the Debtors point out, some courts have held that § 1329 is not subject to § 1325(b) and that the length of a plan can be modified without adhering to the requirements of § 1325(b). *See, e.g.*, *In re Grutsch*, 453 B.R. 420 (Bankr. D. Kan. 2011) (holding that § 1325(b) is not applicable to plan modifications under § 1329). Other courts hold that a modification of the plan must conform with the applicable commitment period as calculated based on current monthly income. *See, e.g.*, *In re Heideker*, 455 B.R. 263 (Bankr. M.D. Fla. 2011) (finding that § 1329 implicitly incorporates § 1325(b)). At this time, the Court declines to address whether §1329 is subject to § 1325(b). Rather, the Court finds that the best relief is the third option suggested by the Debtors.

8

### C. Prorating Debtors' Plan Payments

As described above, an abatement cannot retroactively eliminate an obligation that came due before the debtors sought relief; rather, an abatement serves as a prospective plan modification. Pursuant to § 1329, the debtors may modify their plan anytime after confirmation but before the completion of payments subject to the requirements of § 1325(a). However, a chapter 13 plan modification will not be granted "willy-nilly" or without cause. *In re Hughes*, 2009 WL 2252181, at *5. The debtors must show a legitimate reason for the modification. *Id.* In determining whether the Court will grant a plan modification, the Court may consider factors such as a significant and unanticipated change in income and the impact of a proposed modification on creditors. *Id.*

Here, the Debtors made timely payments on their chapter 13 plan until Mr. Stain sustained an injury that limited the amount of hours he could work. Up to three months after Mr. Stain's injury, the Debtors continued to make payments until they were undisputably no longer able to do so. After Mr. Stain's injury, the Debtors experienced a significant and unanticipated reduction in income. As of June 24, 2013, the Debtors had paid secured creditors in full and returned 20% to unsecured creditors. The Trustee was the only party to file an objection to the Motion, and the Trustee's Objection was based on the Debtors' proposed forgiveness of the delinquency rather than an abatement. The Trustee agreed at the hearing on June 24, 2013 that the Debtors deserve relief.

The Court finds that the Debtors have demonstrated a legitimate reason for an abatement of the Delinquent Payments. Going forward, the Court electing the Debtors' third option and the Trustee's recommendation, the plan may be further modified to provide prorated payments with $254 toward the Delinquent Payments until paid off and $50 toward the ongoing payments required

9

under the plan.[5]

## IV.    CONCLUSION

For the reasons stated above, this Court finds that the Debtors have demonstrated a legitimate cause for granting their Motion. Abatement may only be applied prospectively, and the Delinquent Payments may be paid through the plan as modified.

---

[5] In the Court's calculation, $254 for the remaining twenty-nine months of the plan equates to $7,366. The total request for an abatement was for $8,000, which leaves a $634 difference. This amount may have been adjusted elsewhere; however, if there is still a shortfall in the amounts to be paid, the parties may present motions to the Court.

oo00–00oo
## SERVICE LIST

Service of the foregoing **MEMORANDUM DECISION** will be effected through the Bankruptcy Noticing Center to each party listed below:

Norman and Suzanne Stain
473 4th Street
Ogden, UT 84404
  *Debtors*

Brian D. Johnson
290 25th Street
Suite 208
Ogden, UT 84401
  *Attorney for Debtors*

Kevin R. Anderson tr
405 South Main Street
Suite 600
Salt Lake City, UT 84111
  *Chapter 13 Trustee*

U.S. Trustee
Ken Garf Bldg.
405 South Main Street
Suite 300
Salt Lake City, UT 84111
  *U.S. Trustee*